# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 17, 2004  Decided February 8, 2005

No. 04-5016

Sandra Seegars, et al.,
Appellants/Cross-Appellees

v.

John D. Ashcroft,
Attorney General of the United States and
Anthony A. Williams, Mayor, District of Columbia,
Appellees/Cross-Appellants

Consolidated with
04-5081

Appeals from the United States District Court
for the District of Columbia
(No. 03cv00834)

*Stephen P. Halbrook* argued the cause for appellants/cross-appellees. With him on the briefs was *Richard E. Gardiner*.

*R. Ted Cruz*, Solicitor General, Attorney General's Office

2

of State of Texas, argued the cause for *amici curiae* State of Texas, et al. in support of appellant. With him on the brief were *Greg Abbott*, Attorney General, *Troy King*, Attorney General, Attorney General's Office of State of Alabama, *Charles J. Crist, Jr.*, Attorney General, Attorney General's Office of State of Florida, *Thurbert E. Baker*, Attorney General, Attorney General's Office of State of Georgia, *Lawrence G. Wasden*, Attorney General, Attorney General's Office of State of Idaho, *Phill Kline*, Attorney General, Attorney General's Office of State of Kansas, *Charles C. Foti, Jr.*, Attorney General, Attorney General's Office of State of Louisiana, *Michael A. Cox*, Attorney General, Attorney General's Office of State of Michigan, *Jim Hood*, Attorney General, Attorney General's Office of State of Mississippi, *Mike McGrath*, Attorney General, Attorney General's Office of State of Montana, *Jon Bruning*, Attorney General, Attorney General's Office of State of Nebraska, *Jim Petro*, Attorney General, Attorney General's Office of State of Ohio, *Lawrence E. Long*, Attorney General, Attorney General's Office of State of South Dakota, *Mark L. Shurtleff*, Attorney General, Attorney General's Office of State of Utah, *Jerry W. Kilgore*, Attorney General, Attorney General's Office of Commonwealth of Virginia, and *Patrick J. Crank*, Attorney General, Attorney General's Office of State of Wyoming.

*Daniel Meron*, Deputy Assistant Attorney General, U.S. Department of Justice, argued the cause for appellees/cross-appellants. With him on the brief were *Peter D. Keisler*, Assistant Attorney General, *Kenneth L. Wainstein*, U.S. Attorney, and *Mark B. Stern* and *Lewis Yelin*, Attorneys.

*Lutz Alexander Prager*, Attorney, Office of Attorney General for the District of Columbia, argued the cause for

3

appellee The District of Columbia. With him on the brief were *Robert J. Spagnoletti*, Attorney General, and *Edward E. Schwab*, Deputy Attorney General.

*Andrew L. Frey*, *David M. Gossett*, *Mathew S. Nosanchuk*, and *Eric J. Mogilnicki* were on the brief for *amici curiae* The Brady Center to Prevent Gun Violence, et al. in support of appellee.

Before: SENTELLE and TATEL, *Circuit Judges,* and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

Dissenting opinion filed by *Circuit Judge* SENTELLE.

WILLIAMS, *Senior Circuit Judge*: Plaintiffs raise Second Amendment and local law claims against provisions of the District of Columbia's criminal code that bar them from registering and lawfully possessing pistols within the District of Columbia, or maintaining firearms in their homes free of mandates that they be unloaded and disassembled, or secured by a trigger lock. The district court held that the plaintiffs lacked standing to challenge the provisions limiting the lawful possession of pistols, but that one plaintiff (Hailes) could challenge the "trigger lock" provision. *Seegars v. Ashcroft*, 297 F. Supp. 2d 201, 203-04 (D.D.C. 2004). Because we find that under controlling circuit precedent no plaintiff has standing to challenge either provision, we affirm in part and reverse in part.

4

\* \* \*

D.C. Code § 7-2502.01 prohibits a person from possessing a firearm in the District of Columbia unless it is validly registered. Pursuant to D.C. Code § 7-2502.02(a)(4), pistols not already registered before September 24, 1976 may not now be registered. And D.C. Code § 22-4504(a) prohibits carrying a pistol either openly or concealed on or about one's person without a license within the District of Columbia. As a result, it is not possible in the District to purchase and lawfully possess a new pistol—or indeed any pistol not registered here three decades ago. A fourth provision requires that registrants keep firearms unloaded and disassembled, or bound by a trigger lock or similar device, subject to exceptions for firearms kept at places of business or firearms that are being lawfully used for recreational purposes in the District. See D.C. Code § 7-2507.02. All plaintiffs in this case would like to lawfully possess pistols in the District. Joint Appendix ("J.A.") 14-15. Plaintiff Jordan is the only plaintiff who owns a pistol, but he stores it outside the District in order to avoid violating the law. J.A. 15. Plaintiff Hailes possesses a shotgun that she stores at her home, and would like to remove the trigger lock when she feels endangered. J.A. 14-15. Most of the plaintiffs allege that they live in high-crime neighborhoods and would like to possess loaded weapons in their homes for protection, not secured by a trigger lock; because of the threat of criminal prosecution, they forego what they believe would be the additional security of possessing pistols or possessing a shotgun ready for immediate use. *Id.* Under 28 U.S.C. § 2201 plaintiffs seek a declaration that the challenged provisions are unlawful.

No plaintiff in this case has been arrested and prosecuted for violating the disputed provisions of the Code, so plaintiffs'

5

case constitutes a "preenforcement" challenge. To meet the "case and controversy" requirement of Article III they must allege an "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); see also *Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996).

Assessing standing to attack a statute on constitutional grounds, the Supreme Court has said:

> When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (citing *Doe v. Bolton*, 410 U.S. 179, 188 (1973)) (internal quotation marks omitted). Compare *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 143 n.29 (1974) (suggesting that ripeness for pre-enforcement review of criminal statutes was to be resolved "on a case-by-case basis, by considering the likelihood that the complainant will disobey the law, the certainty that such disobedience will take a particular form, any present injury occasioned by the threat of prosecution, and the likelihood that a prosecution will actually ensue").

In addressing the plaintiff's side of the story, some circuits have demanded that he express an *unconditional* intention to engage in the proscribed behavior, regardless of

6

whether the statute is invalidated, see, e.g., *San Diego County Gun Rights Committee v. Reno*, 98 F.3d 1121, 1127 (9th Cir. 1996) (discussing lack of allegation of a specific time and date at which plaintiffs intended to violate the Crime Control Act). But any such requirement seems inconsistent with our circuit's law, see, e.g., *American Library Ass'n v. Barr*, 956 F.2d 1178, 1196 (D.C. Cir. 1992); but cf. *Martin Tractor Co. v. FEC*, 627 F.2d 375, 382-83 (D.C. Cir. 1980) (holding portion of preenforcement challenge not ripe where appellants "allege that their behavior has thus far conformed to the statutory mandate. They make no allegation of an intention imminent or otherwise to violate the statute . . . ."), and has been expressly rejected by other circuits, e.g., *Mobil Oil Corp. v. Attorney General of Virginia*, 940 F.2d 73, 75 (4th Cir. 1991) ("Public policy should encourage a person aggrieved by laws he considers unconstitutional to seek a declaratory judgment against the arm of the state entrusted with the state's enforcement power, all the while complying with the challenged law, rather than to deliberately break the law and take his chances in the ensuing suit or prosecution.").

On the government's side, the requirement of a credible threat of prosecution ensures that the threatened injury be imminent. Imminence can also be evaluated in terms of ripeness, but the severity of the required threat is independent of the doctrinal hook. See *Doe v. Duling*, 782 F.2d 1202, 1206 n.2 (4th Cir. 1986). Unfortunately the adjective "credible" says little or nothing about the requisite level of probability of enforcement, and clarity prevails only at the poles. If the threat is imagined or wholly speculative, the dispute does not present a justiciable case or controversy. *Younger v. Harris*, 401 U.S. 37, 42 (1971); *Golden v. Zwickler*, 394 U.S. 103 (1969). Evidence that the challenged law is rarely if ever enforced, for example, may be enough to

7

defeat an assertion that a credible threat exists. See, e.g., *D.L.S. v. Utah*, 374 F.3d 971, 974-75 (10th Cir. 2004) (no standing to challenge the constitutionality of Utah's sodomy statute where plaintiff had never been charged, prosecuted, or directly threatened with prosecution, and where prosecutors were apparently not actively enforcing the law); *Clarke v. United States*, 915 F.2d 699, 701-02 (D.C. Cir. 1990) (discussing mootness) (no live case or controversy where there had been no prosecution under the Anti-Deficiency Act and the government had expressed its view that no successful prosecution could be maintained). By contrast, actual threats of arrest made against a specific plaintiff are generally enough to support standing as long as circumstances haven't dramatically changed. See *Steffel v. Thompson*, 415 U.S. 452, 459 (1974).

In *United Farm Workers*, a union challenged provisions of a state statute that made it an unfair labor practice, punishable with criminal penalties, to encourage consumer boycotts of agricultural products by the use of "dishonest, untruthful and deceptive publicity." 442 U.S. at 301. The state argued that the criminal penalty provision had not yet been applied and might never be applied to unfair labor practices. *Id.* at 302. The Court found standing, saying that "the State has not disavowed any intention of invoking the criminal penalty provision against unions that commit unfair labor practices," *id.*, and that the union's fear of prosecution was not "imaginary or wholly speculative," *id.* Thus *United Farm Workers* appeared to find a threat of prosecution credible on the basis that plaintiffs' intended behavior is covered by the statute and the law is generally enforced. Courts have often found that combination enough, especially where plaintiffs seek to engage in activities possibly protected by the First Amendment, see, e.g., *Mangual v. Rotger-Sabat*,

8

317 F.3d 45, 57 (1st Cir. 2003) (citing *New Hampshire Right to Life PAC v. Gardner*, 99 F.3d 8, 13 (1st Cir. 1996)), but not exclusively in such cases, see *Hejira Corp. v. MacFarlane*, 660 F.2d 1356, 1360 (10th Cir. 1981) (plaintiffs had standing to challenge drug paraphernalia statute even where no criminal prosecutions had been commenced and no specific arrest threatened). But courts have also found the absence of a specific threat fatal. See, e.g., *San Diego County Gun Rights Committee*, 98 F.3d at 1127.

Related to but distinct from the requisite likelihood of enforcement is a possible requirement that the plaintiffs occupy a position different from that of others who (conditionally) intend to commit acts that would violate the statute. The district court used language arguably reflecting such a view: "A generalized grievance, which is presumably shared with many other citizens of the District of Columbia, without an imminent threat of prosecution or another type of injury-in-fact (i.e., economic harm), is not sufficient to confer standing to the plaintiffs." *Seegars*, 297 F. Supp. 2d at 214.

To the extent that this language implied that plaintiffs must be individually or specifically burdened in a way distinct from some broader class of potential prosecutees, it is at variance with Supreme Court precedent. Although injuries that are shared *and* generalized—such as the right to have the government act in accordance with the law—are not sufficient to support standing, see *Allen v. Wright*, 468 U.S. 737, 754 (1984), "where a harm is concrete, though widely shared, the Court has found injury in fact." *FEC v. Akins*, 524 U.S. 11, 24 (1998) (internal quotation marks omitted); see also *Public Citizen v. United States Dep't of Justice*, 491 U.S. 440, 449-50 (1989) (plaintiffs had standing to challenge non-disclosure of information even where innumerable other parties might make

9

identical requests for disclosure). Although the political arena may prove appropriate to correct illegal injuries inflicted on much of the public, the fact that an injury is shared, so long as it is concrete enough, doesn't preclude standing. *FEC v. Akins*, 524 U.S. at 24-25 (giving examples of mass tort injuries or injury involving widespread interference with voting rights).

For preenforcement challenges to a criminal statute not burdening expressive rights and not in the form of appeal from an agency decision, our circuit's single post-*United Farm Workers* case appears to demand more than a credible statement by the plaintiff of intent to commit violative acts and a conventional background expectation that the government will enforce the law. In *Navegar, Inc. v. United States*, 103 F.3d 994 (D.C. Cir. 1997), we dealt with a preenforcement challenge by two manufacturers to provisions of the Violent Crime Control and Law Enforcement Act of 1994, 108 Stat. 1796, that made it unlawful to manufacture or possess a semiautomatic assault weapon. 103 F.3d at 997. Portions of the statute prohibited weapons by name that were manufactured only by specific companies. See *id.* With respect to these provisions, we found preenforcement standing because the provisions essentially singled out the companies by name, *id.* at 1000, saying that for those weapons the threat of prosecution could be deemed speculative "only if it is likely that the government may simply decline to enforce these provisions at all." *Id.* But we found no standing for the companies to challenge portions of the statute that described prohibited weapons only by general characteristics rather than by name. *Id.* at 1001.

We cannot help noting that *Navegar*'s analysis is in sharp tension with standard rules governing preenforcement

10

challenges to agency regulations, where an affected party may generally secure review before enforcement so long as the issues are fit for judicial review without further factual development and denial of immediate review would inflict a hardship on the challenger—typically in the form of its being forced either to expend non-recoverable resources in complying with a potentially invalid regulation or to risk subjection to costly enforcement processes. *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967); *Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 164 (1967); *Gardner v. Toilet Goods Ass'n*, 387 U.S. 167, 170 (1967); *Clean Air Implementation Project v. EPA*, 150 F.3d 1200, 1204 (D.C. Cir. 1998). See also *Chamber of Commerce v. FEC*, 69 F.3d 600, 604 (D.C. Cir. 1995) ("an agency rule, unlike a statute, is typically reviewable without waiting for enforcement"). The passage from *United Farm Workers* quoted at the outset alludes to precisely this hardship.

One might explain our greater readiness to hear challenges to regulations than to statutes on the ground that challenges to a statute bring into play all the conventional reasons to avoid premature constitutional adjudications. That answer seems weak, as courts reviewing agency action commonly give preenforcement review not only to statutory claims but to constitutional attacks on the underlying statute. See *Time Warner Entertainment Co. v. FCC*, 93 F.3d 957, 965, 973 (D.C. Cir. 1996). Cf. *General Electric Co. v. EPA*, 360 F.3d 188 (D.C. Cir. 2004) (interpreting explicit limit on review as *not* precluding preenforcement review of facial due process challenge to statute).

There is also tension between *Navegar* and our cases upholding preenforcement review of First Amendment challenges to criminal statutes. See, e.g., *Chamber of*

11

*Commerce v. FEC*, 69 F.3d at 603-04; see also *American Library Ass'n*, 956 F.2d at 1194, 1196 (finding no plaintiff with standing, but demanding only that plaintiffs show an intent to commit acts that would really or arguably violate the provisions challenged). Such cases here and in other courts appear to have rested on the special concern for "chilling effects" on speech. See, e.g., *Chamber of Commerce v. FEC*, 69 F.3d at 604; *New Hampshire Right to Life PAC*, 99 F.3d at 12. Yet, while there is a special First Amendment standing doctrine allowing a party in some circumstances to challenge a provision on the ground that it violates the rights of someone other than the plaintiff himself, see, e.g., *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 392-93 (1988), the idea of a special First Amendment rule for preenforcement review of statutes seems to have no explicit grounding in Supreme Court decisions. In *United Farm Workers*, for example, although plaintiffs in fact attacked the statute on First Amendment grounds, the Court conspicuously neglected to mention the point in its discussion of standing. *United Farm Workers*, 442 U.S. at 297-302.

Despite these apparent tensions, we faithfully apply the analysis articulated by *Navegar*. We do so *not* because it represents our "law of firearms." See generally Frank H. Easterbrook, *Cyberspace and the Law of the Horse*, 1996 U. Chi. Legal F. 207, 207-08 (1996). We do so because it represents the only circuit case dealing with a non-First Amendment preenforcement challenge to a criminal statute that has not reached the court through agency proceedings. See *LaShawn v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996) (en banc).

12

\* \* \*

*Pistols*. All plaintiffs allege that but for D.C. Code §§ 7-2502.02(a), 22-4504(a), they would obtain and register pistols to keep and carry in their homes in the District. J.A. 14-15, 17. Plaintiff Jordan already owns a pistol that he stores outside the District, which he would register and keep in the District but for the Code. J.A. 15. The district court held that the pistol plaintiffs lacked standing because they face no credible threat of imminent prosecution under the District's gun laws. *Seegars*, 297 F. Supp. 2d at 213-14.

Whatever the ultimate understanding of the Second Amendment, compare *Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir. 2002), with *United States v. Emerson*, 270 F.3d 203 (5th Cir. 2001), the conduct that plaintiffs would engage in is at least arguably affected with a constitutional interest, but proscribed by a statute. Thus, the first requirement of *United Farm Workers* and *Navegar* is satisfied.

We agree with the district court, however, that the pistol plaintiffs have not shown a threat of prosecution reaching the level of imminence required by *Navegar*. See 103 F.3d at 1001. Plaintiffs note that the District's gun laws are enforced, see Reply Brief for Appellants/Cross-Appellees at 4, and indeed cite the District's position in prior litigation, declaring that it enforces its gun laws, prosecuting "all violators of the statute under normal prosecutorial standards." *Austin v. United States*, 847 A.2d 391, 393-94 (D.C. 2004) (discussing regulation of concealed weapons). But plaintiffs allege no prior threats against them or any characteristics indicating an especially high probability of enforcement against them. As was true for the claims found non-justiciable in *Navegar*, "nothing . . . indicates any special priority placed upon

13

preventing *these parties* from engaging in specified conduct." 103 F.3d at 1001 (emphasis added); see also *Lion Mfg. Corp. v. Kennedy*, 330 F.2d 833, 839 (D.C. Cir. 1964).

Plaintiff Jordan presents a slightly different case, as he currently owns a pistol, which he stores outside the District. But this improves only the assurance of his conditional intent to commit acts that would violate the law, an assurance that is adequate even for the other plaintiffs. As is true of the other pistol plaintiffs, there is nothing in the record to indicate that he has been personally threatened with prosecution or that his prosecution has "any special priority" for the government. See *Navegar*, 103 F.3d at 1001.

Plaintiffs correctly argue that *Peoples Rights Organization, Inc. v. Columbus*, 152 F.3d 522, 528-29 (6th Cir. 1998) ("*PRO*"), supports preenforcement standing in precisely this circumstance. There the Sixth Circuit entertained a preenforcement challenge to Columbus's assault weapons ban. It held the plaintiffs—owners of weapons who were allegedly uncertain as to whether the ordinance prohibited their weapons—faced a clear Hobson's choice: "They can either possess their firearms in Columbus and risk prosecution under the City's law, or, alternatively, they can store their weapons outside the City, depriving themselves of the use and possession of the weapons." *PRO*, 152 F.3d at 529. The court found the costs of selecting either option high enough to support a preenforcement challenge. *Id.* at 529-30. But see *National Rifle Association v. Magaw*, 132 F.3d 272, 293-94 (6th Cir. 1997).

But *PRO* is plainly inconsistent with *Navegar*. Indeed, the imminence of enforcement appears to have been greater in *Navegar*, as in that case agents of the Bureau of Alcohol,

14

Tobacco and Firearms had visited the plaintiff gun manufacturers, alerted them to the prohibitions in question, and conducted inventories of their firearms stocks, including those of the weapons about to be barred. 103 F.3d at 997, 1001.

Thus the district court here was correct not to follow *PRO*, which applied a far less stringent standard than *Navegar*. But it distinguished *PRO* on the ground that the need for judicial intervention was stronger there because the case included a vagueness challenge. *Seegars*, 297 F. Supp. 2d at 213. We think that an incorrect basis of distinction. We see no reason why plaintiffs whose proposed conduct is merely *possibly* barred by statute should be preferred over ones—like those here—whose proposed conduct is indisputably barred.

Under *Navegar*, therefore, we affirm the decision of the district court that no plaintiff challenging the District's pistol provisions in this case has presented a justiciable case or controversy.

*Trigger Lock*. Plaintiff Hailes possesses a shotgun that she keeps in her home secured by a trigger lock. J.A. 15. She alleges that but for the D.C. Code she would "remove the trigger lock when she deems it necessary to defend herself in her home." *Id*. The district court concluded that Hailes had standing because she must maintain the trigger lock on her shotgun and forego possibly lawful activity because of her "well-founded fear of prosecution." *Seegars*, 297 F. Supp. 2d at 217. To distinguish Hailes from the rest of the plaintiffs, the district court relied on the fact that Hailes had no administrative remedy. See *id*. at 216. Unlike the plaintiffs challenging the pistol regulation, who could apply to register

15

the pistol and then subsequently challenge the inevitable denial, Hailes was left to either leave the trigger lock on her shotgun or remove it and risk criminal prosecution. *Id*.

But the lack of an administrative remedy, while it increases the hardship resulting from denial of preenforcement review, still does not enable Hailes to meet the *Navegar* test. In that case the manufacturers denied standing had no administrative remedy, at least so far as appears, and yet we held their challenge (to the provisions that didn't identify their unique brands) non-justiciable simply because we found the threat of prosecution inadequate, even though the visiting BATF agents had taken an inventory of their soon-to-be-prohibited weapons. *Navegar*, 103 F.3d at 1001. While an unused administrative remedy's presence will often defeat adjudication under doctrines of ripeness, finality or exhaustion, its absence is not enough to render a claim justiciable if the imminence of the threatened injury is inadequate—as is true here under *Navegar*.

Accordingly, because no plaintiff has demonstrated a threat of prosecution sufficiently imminent under circuit law, we have no justiciable case or controversy before us. Therefore, we do not reach the merits. The judgment of the district court is

*Affirmed in part and reversed in part*.

SENTELLE, *Circuit Judge*, *dissenting*: While I commend the balanced tone and thoroughness of the majority opinion, I find that after examining the authorities discussed therein, I reach a different conclusion. As the court relates, plaintiffs seek to challenge the provisions of the District of Columbia's Criminal Code limiting the possession of pistols, as violative of their Second Amendment rights to keep and bear arms. The District Court held that they had no standing. Today this court has affirmed.

I would find standing based on the authority of cases cited by the majority. The record offers essentially undisputed evidence of the appellants' intent to engage in gun-related conduct prohibited by the challenged Code provisions, but for the existence of those provisions. Appellants adequately allege and argue that this conduct is protected by the Second Amendment to the United States Constitution.

The Supreme Court has said, as the majority quotes:

> When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (citing *Doe v. Bolton*, 410 U.S. 179, 188 (1973)) (internal quotation marks omitted). The majority's further analysis of *United Farm Workers* is directly on point:

> In *United Farm Workers*, a union challenged provisions of a state statute that made it an unfair labor practice, punishable with criminal penalties, to encourage consumer boycotts of agricultural products by the use of "dishonest, untruthful and deceptive publicity." 442 U.S.

2

> at 301. The state argued that the criminal penalty provision had not yet been applied and might never be applied to unfair labor practices. *Id*. at 302. The Court found standing, saying that "the State has not disavowed any intention of invoking the criminal penalty provision against unions that commit unfair labor practices," *id.*, and that the union's fear of prosecution was not "imaginary or wholly speculative," *id.* Thus *United Farm Workers* appeared to find a threat of prosecution credible on the basis that plaintiffs' intended behavior is covered by the statute and the law is generally enforced.

Maj. Op. at 7. As appellants allege a similarly realistic fear of prosecution, I would hold *United Farm Workers* controlling, and conclude that appellants have standing to bring the Second Amendment challenge.

As the majority notes, a long line of cases upholds pre-enforcement review of First Amendment challenges to criminal statutes by plaintiffs with bases for standing no different than that asserted by appellants herein for their Second Amendment challenge. For example, in *Virginia v. American Booksellers Ass'n*, 484 U.S. 383 (1988), plaintiffs brought a suit challenging the constitutionality of a newly enacted Virginia statute criminalizing the display for commercial purposes of visual or written material that "depicts sexually explicit nudity, sexual conduct, or pseudo-masochistic abuse which is harmful to juveniles." Va. Code § 18.2-391(a) (Supp. 1987). The Commonwealth of Virginia argued that plaintiffs lacked standing, because they had not yet been prosecuted under the Act. The Supreme Court, in discussing the standing question, declared itself "not troubled by the pre-enforcement nature of this suit." *American Booksellers*, 484 U.S. at 393. Because "the state ha[d] not suggested that the . . . law will not be enforced," and the Court saw no reason to assume that it would not be, the

3

Court found standing, "conclud[ing] that plaintiffs have alleged an actual and well-founded fear that the law will be enforced against them." *Id.* I see no distinction between that case and this.

As the Supreme Court further noted in *American Booksellers*, the danger of the statute before it could "be realized even without an actual prosecution." *Id.* Needless to say, the harm lay in self-censorship–that is, the curtailing of an otherwise constitutional activity because of an allegedly unconstitutional criminal statute. The only difference between that harm and the harm alleged in this case is that there it was to First Amendment interests, here to Second. I know of no hierarchy of Bill of Rights protections that dictates different standing analysis.

I acknowledge, as the majority notes, that a case from this circuit, *Navegar, Inc. v. United States*, 103 F.3d 994 (D.C. Cir. 1997), is in tension with "cases upholding pre-enforcement review of First Amendment challenges to criminal statutes." Maj. Op. at 10. In *Navegar*, plaintiff-appellants sought declaratory judgment striking down as unconstitutional provisions of the Violent Crime Control and Law Enforcement Act of 1994, which outlawed firearm products manufactured by appellants, some by name, and others by description. While we found standing to challenge the regulation of the named products, we held there was no standing as to the products outlawed only by description. *See Navegar*, 103 F.3d at 1001. The *Navegar* court found the threat of prosecution under the provisions outlawing products by description insufficiently imminent to support standing on the record before it. Those latter provisions outlawed firearms in language so general that the court found "it impossible to foretell precisely how these provisions may be applied." *Id.* Further, the *Navegar* court found insufficient evidence of the government's intent to enforce the "generic portions of the Act" against the specific

4

parties before it. *Id.*

While I acknowledge that the majority is correct that *Navegar* can be read as controlling the case before us and barring standing, I think it is distinguishable. The allegedly constitutionally protected conduct in the record before us is clearly defined and clearly unlawful under a statute that the District apparently enforces regularly, and under which there is certainly no doubt that plaintiffs reasonably apprehend enforcement. I would therefore find the line of cases represented by *American Booksellers*, rather than *Navegar*, controlling.

For the reasons set forth above, I respectfully dissent.