# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

No. 04-5016 September Term, 2004

03cv00834

Filed On: June 21, 2005 [901536]

Sandra Seegars, et al.,
    Appellants

  v.

Alberto Gonzales, Attorney General of the United States and Anthony A. Williams, Mayor, District of Columbia,
    Appellees

_____
Consolidated with 04-5081

**BEFORE**:     Ginsburg, Chief Judge, and Edwards, Sentelle, Henderson, Randolph, Rogers, Tatel, Garland, and Roberts, Circuit Judges, and Williams, Senior Circuit Judge

## O R D E R

Appellants' petition for rehearing en banc and the responses thereto have been circulated to the full court. The taking of a vote was requested. Thereafter, a majority of the judges of the court in regular, active service did not vote in favor of the petition. Upon consideration of the foregoing, it is

**ORDERED** that the petition be denied.

### Per Curiam

                                         **FOR THE COURT:**
                                         Mark J. Langer, Clerk

                        BY:     /s/
                                  Michael C. McGrail
                                  Deputy Clerk

*Circuit Judges* Sentelle, Randolph, and Roberts would grant the petition for rehearing en banc.

A statement of *Chief Judge* GINSBURG concurring in the denial of rehearing en banc is attached.

A statement of *Circuit Judge* SENTELLE dissenting in the denial of rehearing en banc is attached.

A statement of *Senior Circuit Judge* WILLIAMS is attached.

GINSBURG, *Chief Judge*, *concurring in the denial of rehearing en banc*:

The court properly denies the appellants' petition for rehearing because this case does not present a circumstance in which a plaintiff is "required to await and undergo a criminal prosecution as the sole means of seeking relief." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). The plaintiffs challenging the pistol regulation, as both the panel and the district court observed, *see* 396 F.3d 1248, 1256 (D.C. Cir. 2005); 297 F. Supp.2d 201, 216-17 (D.D.C. 2004), could have applied to register a pistol and then challenged the subsequent denial of that application on the basis of the Second Amendment in the courts of the District of Columbia, *see generally* D.C. CODE §§ 2-510(a), 7-2502.10(b), 7-2507.09; *Fesjian v. Jefferson*, 399 A.2d 861, 863 (D.C. 1979) (entertaining challenges under the Equal Protection Clause and the Takings Clause to D.C. gun statute upon appeal from denial of registration), and thereafter, if necessary in the Supreme Court of the United States, *see* 28 U.S.C. § 1257. Because the appellants have, as the Government argues, a ready means of presenting their constitutional challenge, it cannot fairly be said that a criminal prosecution is their "sole means of seeking relief."

Although the plaintiff challenging the trigger lock regulation apparently had no administrative remedy by way of which she could secure judicial review, her claim to standing is based only upon her averment that but for the regulation "she would remove the trigger lock when she deems it necessary to defend herself in her home." *Seegars*, 396 F.3d at 1256. That she would ever find it necessary to remove the trigger lock in order to defend herself in her home, and that she would then be prosecuted for that action,

are highly speculative propositions, and therefore insufficient to give her standing to sue. *See Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) ("Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be certainly impending to constitute injury in fact.").

SENTELLE, *Circuit Judge*, *dissenting from the denial of en banc*: With one distinct but significant exception, I concur in the ideas and reasoning expressed in the separate opinion of Senior Circuit Judge Williams. For the reasons expressed in my dissent in the panel opinion in this cause, *Seegars v. Gonzales*, 396 F.3d 1248, 1256 (D.C. Cir. 2005), I do not accept the proposition that *Navegar, Inc. v. United States*, 103 F.3d 994 (D.C. Cir. 1997), is controlling on the question of standing. With that one reservation, I join in the observations of Senior Circuit Judge Williams concerning the standing of appellants to bring this action and dissent from the denial of en banc.

WILLIAMS, *Senior Circuit Judge*: I write briefly to explain my call for rehearing en banc on the panel decision, which I wrote. As a panel we were constrained by recent circuit authority, *Navegar, Inc. v. United States*, 103 F.3d 994 (D.C. Cir. 1997), even though, as my opinion for the court made clear, it appeared to be in conflict with an earlier Supreme Court decision, *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979). The essential issue was whether plaintiffs' injury—their inability, on pain of criminal sanction, to possess and use guns that they believed critical for their self-defense—was sufficiently imminent to qualify for Article III standing. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The imminence of the threat to their security matched the imminence of the threat of prosecution; the greater the probability of enforcement, the greater the pressure to forego what they saw as lawful and needed security precautions. And the defendant governments in no way suggested any reluctance to enforce the laws to the hilt. Although the threat of prosecution appeared as imminent as in *United Farm Workers*, *Navegar* demanded a higher level of imminence, indeed one rarely attainable in practice.

When we asked the defendant governments to respond to the petition for rehearing en banc, they argued that all plaintiffs other than Hailes could seek permits to carry pistols under the statutes forbidding their desired conduct. The governments did not suggest that there was the remotest chance that the permits would be granted. The statutes plainly, unequivocally, bar issuance of such permits. See D.C. Code §§ 7-2502.01, 7-2502-02(a); *Seegars v. Gonzales*, 396 F.3d 1248, 1250 (D.C. Cir. 2005). That being so, it is mysterious to me how plodding through the charade of seeking permits would render the threat of prosecution (and thus the need to forego measures for their security) one iota

more imminent. The probability of the laws' enforcement will be exactly the same after the administrative exercise as now. The availability of a null administrative remedy seems irrelevant to the standing issue.

Moreover, to frame the issue more closely in the terms of *United Farm Workers*, it is an illusion to suppose that pursuit of the administrative "remedies" identified by the defendant governments could alleviate the burden on plaintiffs of "await[ing] and undergo[ing] a criminal prosecution as the sole means of seeking relief." *United Farm Workers*, 442 U.S. at 298. At the conclusion of that vain exercise they will face exactly the dilemma they do today—the choice between facing criminal prosecution and foregoing security measures they believe necessary and lawful.

As for Hailes, she lawfully possesses the weapon in question, and is forbidden from maintaining it loaded and assembled or free of a trigger lock. There being not even a useless administrative remedy available for Hailes, the governments argue that the risk of prosecution is too low, as her preferred course of conduct is entirely private and contingent on her feeling threatened in the future. This is true in every sense except the sense that counts. It is presumably true that, as a practical matter, she can maintain her weapon in her own home any way she likes, so long as she is discreet about it and so long as the occasion against which she wants to have it at the ready—intrusion by a burglar or other marauder—never arises. But if such an intrusion occurs, and she is able to defend herself by virtue of having violated the law, the ensuing police investigation will bring out the evidence of her crime (unless she were to successfully commit another crime by lying about how she kept the gun). Nothing the governments say suggests that the risk of prosecution will be low then. The risk of

prosecution in the event of the contingency she fears is high, and thus the resulting deterrent to her freeing the trigger lock is effectively as great as if she proposed to violate the law down at the police station.

Moreover, the governments offer an apparently baseless suggestion that in the event of use against an intruder, Hailes could successfully invoke self-defense. First, the law contains no such exception, and it is sheer speculation to suppose that courts would find it. Second, Hailes's whole problem is that her belief as to what is prudent for her safety and allowed by the Constitution differs from the District's view. The possibility of an undefined and possibly non-existent defense is no answer.

I do not think our law of standing requires that citizens who want to obey the law, but also to follow their judgment as to self-preservation, be told that they cannot get a reading on the validity of the law except by pursuing concededly useless administrative avenues or by engaging in forbidden behavior that is sure to be exposed if the risk they fear arises.